*This opinion is subject to revision before final publication in the Pacific Reporter*

**2017 UT 39**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

MARK L. OLIVER,
*Respondent,*

*v.*

UTAH LABOR COMMISSION, WORKERS COMPENSATION FUND,
and D. TYREE BULLOCH CONSTRUCTION,
*Petitioners.*

No. 20150889
Filed July 25, 2017

On Certiorari to the Utah Court of Appeals

Attorneys:

Floyd W. Holm, St. George, for petitioners Workers Compensation
Fund and D. Tyree Bulloch Construction

Jaceson R. Maughan, Salt Lake City, for petitioner
Utah Labor Commission

Virginius Dabney, St. George, Stony Olsen, Moroni, for respondent

JUSTICE HIMONAS authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, JUSTICE DURHAM, and JUDGE PETTIT joined.

ASSOCIATE CHIEF JUSTICE LEE filed an opinion concurring in the
judgment.

Having recused himself, JUSTICE PEARCE did not participate herein;
DISTRICT COURT JUDGE KARA PETTIT sat.

JUSTICE HIMONAS, opinion of the Court:

## INTRODUCTION

¶ 1   After injuring himself on a construction site, Mark Oliver applied for permanent total disability benefits under Utah Code section 34A-2-413, the permanent total disability portion of the Workers' Compensation Act. The Labor Commission denied Mr. Oliver's application based on his failure to prove two elements of a permanent total disability claim: (1) that he was limited in his ability to do basic work activities, UTAH CODE § 34A-2-413(1)(c)(ii), and (2) that he was not prevented from performing the essential functions of work for which he had been qualified until the time of his accident, *id.* § 34A-2-413(1)(c)(iii). Mr. Oliver appealed, and the Utah Court of Appeals reversed the Labor Commission's order.

¶ 2   We now hold that the Labor Commission properly denied Mr. Oliver's application and accordingly reverse the court of appeals. For the reasons explained in this opinion, the court of appeals' interpretation of Utah Code section 34A-2-413(1)(c)(ii)—the "basic work activities" provision of the permanent total disability statute—is contrary to the plain meaning of the statute and our decision in *Provo City v. Utah Labor Commission*, 2015 UT 32, 345 P.3d 1242.[1] On the correct interpretation of this provision, the Labor Commission's determination that Mr. Oliver failed to prove this element is supported by substantial evidence.

¶ 3   We also hold that the court of appeals misallocated the burden of proof and improperly considered information not contained in the administrative record in reversing the Labor Commission's determination that Mr. Oliver had failed to prove the "essential functions" element of a permanent total disability claim.[2]

---

[1] In 2016, the legislature amended this provision to provide that employees needed to prove that they had "an impairment or combination of impairments that *reasonably* limit [their] ability to do basic work activities." 2016 Utah Laws 168. But we apply the version of the statute that was in effect at the time of Mr. Oliver's injury because neither party has argued that the amendment is retroactive. Unless otherwise indicated, all citations are to this version of the statute.

[2] The "essential functions" element requires the employee to prove that his or her impairments "prevent the employee from performing the essential functions of the work activities for which the employee

(cont.)

## BACKGROUND

¶ 4    On March 27, 2000, Mark Oliver was working for D. Tyree Bulloch Construction (Bulloch Construction) when he fell from a suspended porch, injuring himself. For several years following his injury, Mr. Oliver worked a variety of jobs, including as a construction worker, landscape designer, and, most recently, as a delivery truck driver. He stopped working altogether in 2007.

¶ 5    On June 20, 2012, Mr. Oliver applied to the Utah Labor Commission for permanent total disability benefits under Utah Code section 34A-2-413, the permanent total disability statute. The parties submitted conflicting medical evidence and vocational evidence. One medical expert, Dr. Mark Passey, opined that Mr. Oliver was able to "perform just about any activities he wishes to do," while another, Dr. Jacob Corry, believed that Mr. Oliver would suffer from constant attention difficulties due to his pain and a severe restriction in his ability to walk, balance, and crouch.

¶ 6    The parties also submitted conflicting vocational evidence. Relying on Dr. Corry's medical opinion, Mr. Oliver's vocational expert opined that Mr. Oliver likely could not perform basic work activities because he was unable to concentrate due to pain. By contrast, Bulloch Construction's vocational expert testified that Mr. Oliver was able to perform medium-duty work, and that he was not limited in his ability to do basic work activities. Bulloch Construction's expert acknowledged that, if Dr. Corry's medical opinion was correct, Mr. Oliver likely could not perform basic work activities.

¶ 7 Because of the differences in medical opinion, an administrative law judge (ALJ) appointed an independent medical panel to conduct an impartial review of the medical evidence. This panel concluded that Mr. Oliver could perform medium-duty work as long as he was able to be absent from work occasionally, elevate his legs for five to ten minutes out of every hour, and take occasional unscheduled breaks during the day. The panel also opined that, as a general matter, Mr. Oliver was able to perform basic work activities; among other things, it found that he could "concentrate, . . . commute,

---

has been qualified until the time of the industrial accident or occupational disease that is the basis for the employee's permanent total disability claim." UTAH CODE § 34A-2-413(1)(c)(iii).

communicate, work, remain at work for the scheduled time, and cope with . . . the work setting."

¶ 8    After reviewing this evidence, the ALJ found that Mr. Oliver was permanently totally disabled and tentatively awarded him permanent total disability benefits. Bulloch Construction then appealed this award to the Labor Commission, which reversed it on two grounds.

¶ 9    First, the Labor Commission concluded that Mr. Oliver had not proven that he was limited in his ability to perform basic work activities. Giving great weight to the medical panel report, the Labor Commission found that Mr. Oliver was able to work, remain at work, and cope with changes at work. It acknowledged the medical panel's conclusion that Mr. Oliver may require unscheduled breaks and may be absent from work occasionally, but found that these "indefinite circumstances do not present a reasonable limitation on Mr. Oliver's ability to do basic work activities in light of the panel's description that he may work, remain at work, and cope with changes at work." Similarly, the Labor Commission found that Mr. Oliver's need to "elevate his legs for 5-10 minutes for every hour he is required to stand is not enough to show [that he] is reasonably limited in his flexibility or endurance . . . ."

¶ 10 The Labor Commission also disagreed with the ALJ's conclusion that Mr. Oliver could not perform the essential functions of his previous work as a delivery truck driver. The Labor Commission found that Mr. Oliver had been qualified to be a delivery truck driver at the time of the accident. Based on testimony about his medical and vocational ability, it also found that he had failed to prove that he was unable to perform the essential functions of that job. Accordingly, the Labor Commission concluded that Mr. Oliver had not established that he was entitled to permanent total disability benefits.

¶ 11 After filing an unsuccessful motion for reconsideration, Mr. Oliver appealed the Labor Commission's denial of benefits to the Utah Court of Appeals. The court of appeals reversed the Labor Commission's order on two points. First, it held that the Labor Commission misinterpreted the basic work activities provision of the permanent total disability statute. Second, after consulting the Bureau of Labor Statistics' Occupational Outlook Handbook—a handbook that the parties agree was not in the record—it concluded that the Labor Commission's determination that Mr. Oliver had been qualified to work as a delivery truck driver was not supported by substantial

evidence. The court of appeals accordingly reinstated the ALJ's award of permanent total disability benefits.

¶ 12 Bulloch Construction subsequently petitioned this court for certiorari, which we granted. We reverse the court of appeals and uphold the Labor Commission's decision.

## STANDARDS OF REVIEW

¶ 13 "On certiorari, we give the court of appeals' decision no deference and review its decision under a correctness standard." *Nichols v. Jacobsen Constr. Co.*, 2016 UT 19, ¶ 13, 374 P.3d 3 (citation omitted). We also review interpretations of a statute for correctness. *Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, 2007 UT 42, ¶ 11, 164 P.3d 384. And when the Labor Commission's factual determinations are properly before us on review, we review them under the substantial evidence standard of review, examining the whole record to determine whether "a reasonable mind might accept as adequate the evidence supporting the decision." *Id.* ¶ 35 (internal quotation marks omitted).

## ANALYSIS

¶ 14 We set ourselves three tasks in this part of the opinion. First, we provide an overview of the elements of a permanent disability claim and explain the work each element does and how the elements relate to each other. We then hold that the court of appeals erred in its interpretation of the basic work activities provision, explain why we reject the concurring opinion's interpretation of this provision, and uphold the Labor Commission's determination that Mr. Oliver did not prove that he was limited in his ability to do basic work activities. Third and finally, we explain the errors in the court of appeals' analysis of whether Mr. Oliver established that his impairments prevented him from performing the "essential functions" of the work for which he had been qualified until his accident.

### I. THE ELEMENTS OF A PERMANENT
### TOTAL DISABILITY CLAIM

¶ 15 Under Utah Code section 34A-2-413, an employee is required to prove six elements to establish a claim for permanent total disability benefits: (1) "the employee sustained a significant impairment" as a result of the work-related injury, (2) "the employee is not gainfully employed," (3) "the employee has an impairment or combination of impairments that limit the employee's ability to do basic work activities," (4) the impairment or impairments "prevent the employee

from performing the essential functions of the work for which the employee has been qualified" until the time of the accident, (5) "the employee cannot perform other work reasonably available," and (6) "the industrial accident or occupational disease is the direct cause of the employee's permanent total disability." UTAH CODE § 34A-2-413(1)(b)–(c); *Provo City v. Utah Labor Comm'n*, 2015 UT 32, ¶ 6, 345 P.3d 1242. Utah Code section 34A-2-413(1)(b)–(c) lays out the factual elements of a permanent total disability claim, and the employee bears the burden of proving each of these factual elements by a preponderance of the evidence. *See Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, 2007 UT 42, ¶ 33, 164 P.3d 384.

¶ 16 Other than the significant impairment and causation provisions, the elements of a permanent total disability claim are all specific inquiries into an employee's ability to work. The core question at which these elements are directed is whether, notwithstanding his or her impairments, the employee can participate in the workforce. Thus, the gainful employment element asks if the employee is currently in the workforce. UTAH CODE § 34A-2-413(1)(c)(i). The essential functions element asks if the employee can still do the work he or she has been qualified for. *Id.* § 34A-2-413(1)(c)(iii). The other work element asks if, given his or her limitations, there is any other reasonably available work for the employee to do. *Id.* § 34A-2-413(1)(c)(iv). And, as we explain in greater detail below, the basic work activities element asks whether, irrespective of specific employment prospects, the employee retains the core functionality necessary to meaningfully participate in the workforce. *Id.* § 34A-2-413(1)(c)(ii).

¶ 17 We also note that, in contrast to the federal Social Security Act, the permanent total disability statute does not require the Labor Commission to analyze these six elements in any particular sequence.[3] Instead, if the Labor Commission finds that an employee has failed to

---

[3] For a period of time, Utah's permanent total disability statute directed the Labor Commission to use the "sequential decision-making process of the Social Security Administration" in resolving claims for permanent total disability benefits. UTAH CODE § 35-1-67(1)(b) (1994). In 1995, however, the legislature prescribed a Utah-specific process for adjudicating permanent total disability claims that made no reference to federal law. *See* 1995 Utah Laws 567.

prove any one of these elements by a preponderance of the evidence, it must deny permanent total disability benefits; otherwise, it must award them.

## II. THE BASIC WORK ACTIVITIES PROVISION

¶ 18   This case calls upon us to interpret Utah Code section 34A-2-413(1)(c)(ii), which requires employees seeking permanent total disability benefits to prove that they have "an impairment or combination of impairments that limit [their] ability to do basic work activities." At issue in this appeal is the meaning of the word "limit."

¶ 19   Our courts use a "plain meaning" approach to statutory interpretation. *Nichols v. Jacobsen Constr. Co.*, 2016 UT 19, ¶ 17, 374 P.3d 3. Under this approach, we need not look beyond the statute's text to secondary considerations—such as legislative history or the canon that we interpret statutes to avoid absurd results—unless there is ambiguity in the statute. *See Ramsay v. Kane Cty. Human Res. Special Serv. Dist.*, 2014 UT 5, ¶ 7, 322 P.3d 1163 ("[W]e look to the plain meaning of the statute first and go no further unless it is ambiguous." (citation omitted)).

¶ 20   The mere fact that both sides to a case may offer a conceivable construction of the statutory language is not enough to create an ambiguity. *See Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 9, 248 P.3d 465. This is because "the statutory text may not be 'plain' when read in isolation, but may become so in light of its linguistic, structural, and statutory context." *Id.* Put another way, "[t]he fact that the statutory language may be susceptible of multiple meanings does not render it ambiguous; 'all but one of the meanings is ordinarily eliminated by context.'" *Id.* ¶ 13 (quoting *Deal v. United States*, 508 U.S. 129, 131–32 (1993)).

¶ 21   As *Olsen* instructs, we look to multiple contexts—"linguistic, structural, and statutory"—in interpreting the meaning of statutory text. *Id.* ¶ 9. In looking to the text's structural context, we are guided by the notion that "terms of a statute are to be interpreted as a comprehensive whole and not in a piecemeal fashion." *Estate of Berkemeir ex rel. Nielsen v. Hartford Ins. Co. of Midwest*, 2004 UT 104, ¶ 10, 106 P.3d 700 (citation omitted). A proposed interpretation that is plausible in isolation may thus "lose[] its persuasive effect when we [seek to] harmonize [it] with the rest of" the statutory scheme. *Olsen*, 2011 UT 10, ¶ 12 n.5 (citation omitted); *see also State in Interest of J.M.S.*, 2011 UT 75, ¶ 22, 280 P.3d 410 ("In essence, statute[s] should be

construed . . . so that no part [or provision] will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another." (quoting *State v. Jeffries*, 2009 UT 57, ¶ 9, 217 P.3d 265) (alterations in original)).

¶ 22  With these principles in mind, we turn to the case before us. In two cases that we are currently reviewing—this one and *Quast v. Labor Commission*, 2015 UT App 267, 362 P.3d 292—the Utah Court of Appeals held that employees can show a "limit" on their ability to do basic work activities by adducing proof of any limitation on their ability to work, no matter how slight. On the court of appeals' reading of this provision, even employees who are "capable of performing basic work activities" may establish a claim for permanent total disability benefits if they can show "some limitation" on the performance of those activities. *Oliver v. Labor Comm'n*, 2015 UT App 225, ¶ 13, 359 P.3d 684. Because this interpretation is at odds with the plain meaning of the basic work activities provision, we reverse the court of appeals.

*A. The Court of Appeals Erred in Its Interpretation*
*of the Basic Work Activities Provision*

¶ 23  To explain why the court of appeals erred in its interpretation of the basic work activities provision, we must first briefly review our decision in *Provo City v. Utah Labor Commission*, 2015 UT 32, 345 P.3d 1242—the most recent case in which we interpreted the basic work activities provision. In *Provo City*, we were called upon to interpret the meaning of "basic work activities." We held that "basic work activities" are not just any activities that are typically performed in the workplace. Instead, they are those activities that are essential to "a broad spectrum of jobs available." *Id.* ¶ 28. They are, in other words, those capabilities that enable an employee "to perform most jobs, including more sedentary lines of work." *Id.* ¶ 29.

¶ 24  Viewed in isolation, the term "limit" has a variety of different possible meanings, but we do not define the term in isolation. Instead, we consider its meaning in light of the statute as a whole and *Provo City*'s construction of "basic work activities." *See Olsen*, 2011 UT 10, ¶ 9 (noting that statutes must be read in light of their linguistic and legal context).[4] Read in this context, it is plain to us that whether an

---

[4] *Webster's Dictionary* gives as possible definitions of the term "limit" something that "bounds," "restrains," or "confines"—terms that connote different degrees of restriction. *Limit*, WEBSTER'S THIRD NEW
(cont.)

employee is "limited" in his ability to perform basic work activities depends on whether, notwithstanding his impairments, he is meaningfully able to perform the core tasks that are basic prerequisites to employment. As the *Provo City* opinion itself recognized in concluding that an employee's nontrivial neck injuries were not, by themselves, enough to constitute a "limit" on his ability to do basic work activities, not just any limit on the ability to do typical workplace activities will do. Instead, *Provo City* teaches that proof of permanent total disability requires proof of a limitation that strikes at the heart of those "abilities and aptitudes necessary to do most jobs." *Provo City*, 2015 UT 32, ¶¶ 28–29. To the extent that a limitation does not significantly hinder an employee in his ability to meaningfully participate in the workforce, it may be a limit on *typical* workplace activities, but it is not a limit on *basic* work activities as *Provo City* defines them. The court of appeals' contrary conclusion appears to be based on reading the word "limit" in isolation, without considering its linguistic context.[5]

---

INTERNATIONAL DICTIONARY 1312 (2002); *see, e.g.*, *Restrain,* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1936 (2002) ("restrain" can mean "to . . . prevent from doing something," "to keep from being manifested or performed," or "to limit or restrict to or in respect of a particular action or course"). The concurring opinion disagrees, citing *The Random House Dictionary of the English Language* for the proposition that "[t]he verb *limit* conveys only the idea of restraint or confinement." *Infra* ¶ 66. But warring dictionaries do not refute the basic point that "limit," considered in the abstract, connotes a variety of different degrees of restriction. Indeed, they confirm it.

[5] The court of appeals' interpretation of the basic work activities provision is at odds not only with *Provo City*'s interpretation of the meaning of "basic work activities," but also with its application of the basic work activities provision to the facts of the case. In *Provo City*, the Labor Commission concluded that the employee seeking permanent total disability benefits was limited in his ability to perform basic work activities after finding that he did not "have a full range of motion with his head and neck and cannot put stress on his neck such that he does not have a reasonable degree of flexibility." *Provo City v. Utah Labor Comm'n*, 2015 UT 32, ¶ 29, 345 P.3d 1242. Although we upheld the Labor Commission's ultimate determination because it was supported

(cont.)

¶ 25 The court of appeals also failed to consider the structural context of the basic work activities provision. *See Estate of Berkemeir ex rel. Nielsen*, 2004 UT 104, ¶ 10 ("[T]erms of a statute are to be interpreted as a comprehensive whole and not in a piecemeal fashion." (citation omitted)). Specifically, it disregarded the maxim that statutes "should be construed . . . so that no part [or provision] will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another." *State in Interest of J.M.S.*, 2011 UT 75, ¶ 22 (alterations in original) (citation omitted).

¶ 26 As we have explained, the basic work activities provision appears alongside two other provisions: (1) Utah Code section 34A-2-413(1)(c)(iii), which requires an employee to prove that his or her impairment "prevent[s] the employee from performing the essential functions of the work activities for which the employee has been qualified until the time of the industrial accident"; and (2) Utah Code section 34A-2-413(1)(c)(iv), which requires an employee to prove that he or she "cannot perform other work reasonably available." Each of these provisions can be met only if an employee suffers from some limitation on the ability to do some common workplace activity. But, if the court of appeals' interpretation were correct, this would mean that virtually any time an employee established either the "essential functions" element or the "other work reasonably available" element, that employee would automatically establish that he or she had a limit on the ability to do basic work activities. It undermines the statutory scheme to interpret the basic work activities provision such that it adds nothing to the permanent total disability analysis.

---

by substantial evidence, we concluded that the Labor Commission's "specific findings regarding [the employee's] neck impairments" were "inadequate to show that his ability to perform most types of jobs was limited." *Id.* Despite acknowledging that these findings were enough to conclude that the employee might be unable to perform physically demanding jobs, we held that they did not suffice to show that the employee suffered limitations that impacted his ability "to perform most jobs, including more sedentary lines of work." *Id. Provo City* thus plainly requires employees to show more than that their impairment imposes "some limitation" on their ability to do basic work activities.

¶ 27 Finally—although we have no need to recur to secondary canons of construction when the meaning of a statute is plain and unambiguous—we note that even if the basic work activities provision were ambiguous, the "absurd consequences" canon would still argue in favor of the interpretation we adopt today. The absurd consequences canon instructs that when a statute is ambiguous, we "resolve[] [that] ambiguity by choosing the reading that avoids" absurd consequences. *Bagley v. Bagley*, 2016 UT 48, ¶ 27, 387 P.3d 1000 (internal quotation marks omitted). If proof of any limit, no matter how slight, were enough for employees to establish that they are limited in their ability to do basic work activities, then it is conceivable that a person could prove a permanent total disability based on a slight limp, the occasional headache, or some other minimal physical or mental limitation. While other elements of the permanent total disability statute might weed these claims out, as the concurrence speculates, this would ultimately depend on the details of the case before the Labor Commission. *See infra* ¶¶ 96–98. We cannot accept a reading of the statute that opens the door to these consequences.[6]

¶ 28 Given our interpretation of the basic work activities provision, we conclude that the Labor Commission correctly interpreted the basic work activities provision in denying Mr. Oliver's application for permanent total disability benefits. Indeed, we

---

[6] In interpreting the basic work activities provision, the court of appeals relied on a portion of the same federal social security regulation that we approvingly quoted in *Provo City* when defining "basic work activities." *See Oliver v. Labor Comm'n*, 2015 UT App 225, ¶ 10, 359 P.3d 684; *see also Provo City*, 2015 UT 32, ¶ 28 (quoting 20 C.F.R. § 404.1521(b) (2012)). We are concerned that the court of appeals read too much into our reference to federal law in *Provo City*, and take this opportunity to clarify that we did not mean for *Provo City* to suggest that federal social security law is an independent source of meaning for our permanent total disability statute—as opposed to persuasive authority that we may consult, when helpful, to aid us in the task of statutory construction. And we note that federal law is unhelpful to the particular interpretive task here because the nearest federal cognate of the basic work activities provision—20 C.F.R. § 404.1520(c)—requires a finding of a "significant limit," as opposed to a "limit," on basic work activities, and is therefore disanalogous.

understand the interpretation of the basic work activities provision that we articulate here to be in keeping with the Labor Commission's long-standing test for whether an applicant for permanent total disability benefits has proven that he or she is limited in the ability to do basic work activities. This test looks to whether the impairment meaningfully inhibits the employee from exercising a common core of capabilities "generally required in a wide variety of employment settings" that include the ability "to report for work on a regular basis and remain at work throughout the day, as well as a reasonable degree of flexibility, strength, endurance, mental capacity and ability to communicate." *Anderson v. Dee Warner Constr.*, 2007 UT Wrk. Comp. LEXIS 41 at *9. Nothing in this opinion should be taken as a repudiation of this doctrinal implementation of the basic work activities provision.

¶ 29 The Labor Commission denied Mr. Oliver's application after concluding that his work restrictions—especially the requirements that he take occasional unscheduled breaks and that he may be absent from work occasionally—did not "present a reasonable limitation on Mr. Oliver's ability to do basic work activities." The requirement that a limitation be "reasonable"—in the sense that the limitation would make it unreasonable for an employer to ask an employee to perform the tasks that are basic prerequisites of successfully working a broad swath of jobs—follows from the meaning of "basic work activities." If a limit does not make it unreasonable to ask an employee to do the core tasks that are essential to a broad swath of different jobs, it is not a limit on *basic* work activities at all. In our view, the Labor Commission's conclusion that Mr. Oliver was not "reasonably limit[ed]" in his ability to do basic work activities amounted to a determination that he was not rendered practically incapable of performing the core tasks that are essential to a broad swath of different jobs.

¶ 30 In sum, we hold that only those impairments that strike at the heart of the abilities and aptitudes that are necessary to most jobs—i.e., only those impairments that meaningfully inhibit an employee from performing the core tasks of a wide swath of jobs to such an extent that it would be unreasonable for an employer to ask the employee to perform those tasks—can be said to limit an employee's ability to do basic work activities. We believe that the Labor Commission was applying this interpretation when it focused on the question whether Mr. Oliver suffered from "reasonable limitations" in concluding that he had failed to prove that his impairments limited his ability to do basic work activities, and accordingly we find no error in the Labor Commission's construction of the permanent total disability statute.

### B. The Permanent Total Disability Statute Should Not Be Interpreted in Lockstep with Federal Disability Law

¶ 31 In contrast to the analysis above, the concurring opinion argues that we should read the basic work activities provision in lockstep with an element for establishing disability that has been promulgated in a federal regulation under the Social Security Act. As the concurrence puts it:

> Under Utah law the worker is required to show that he 'has an impairment or combination of impairments that limit the employee's ability to do basic work activities.' UTAH CODE § 34A-2-413(1)(c)(ii). This provision has an obvious counterpart in federal disability law. The parallel element under the Social Security Act requires proof of an impairment that 'significantly limit[s]' the worker's 'physical or mental ability to do basic work activities.' 20 C.F.R. § 404.1522(a).

*Infra* ¶ 75. Thus, in the concurrence's view, the term "limit" in the permanent total disability statute is a "legal term[] of art that [has been] transplanted from federal disability law in this case." *Infra* ¶ 88.

¶ 32 On the other hand, the concurrence acknowledges that federal law "requires a finding of a 'significant limit' on basic work activities, while our Utah workers' compensation standard speaks only of a 'limit.'" *Infra* ¶ 91 (quoting *supra* ¶ 27 n.6). But it says that this distinction cannot support our test for whether an impairment limits a worker's ability to perform basic work activities. Instead, keying into the fact that federal courts have largely read the term "significant" out of federal disability law, the concurrence concludes that "the inference to be drawn" from the fact that "[f]ederal law speaks in terms of a 'significant limit' and our statute is phrased in terms of only a 'limit'" is that "the Utah legislature deliberately omitted the term 'significant' in order to align its standard more closely with the standard employed in federal cases." *Infra* ¶ 92. We cannot bring ourselves to interpret the legislature's decision to depart from the wording of a federal standard as a mandate to employ that very standard.

¶ 33 To begin, we have a great deal of respect for the canon that "[w]hen the legislature borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken."

*Maxfield v. Herbert*, 2012 UT 44, ¶ 31, 284 P.3d 647 (internal quotation marks omitted). But this is an unusual case in which to invoke that presumption.

¶ 34 Before 1995, the permanent total disability statute operated in lockstep with federal disability law, providing that permanent total disability was to be evaluated using the "sequential decision-making process of the Social Security Administration." UTAH CODE § 35-1-67(1)(b) (1994). In 1995, however, the legislature caused the permanent total disability statute to deviate from federal disability law, enacting a set of Utah-specific elements for establishing permanent total disability. While the gist of our permanent total disability statute is similar to federal disability law—they both aim at figuring out whether a worker is disabled—*every single element* in the permanent total disability statute is worded differently from federal law.[7]

¶ 35 Thus, because the legislature replaced the statute expressly incorporating federal disability law with a statute that articulates its own standards in a manner that deviates from the federal language, a threshold condition for invoking the presumption set forth in *Maxfield*—that the legislature has "borrowed" terms of art from another

---

[7] *Compare* 20 C.F.R. § 404.1520(a)(4)(i) (not disabled if doing "substantial gainful activity"), *with* UTAH CODE § 34A-2-413(1)(c)(i) (not disabled if "gainfully employed"); *compare* 20 C.F.R. § 404.1520(a)(4)(ii) (not disabled if there is no "severe medically determinable physical or mental impairment" such that any impairment does not "significantly limit your physical or mental ability to do basic work activities"), *with* UTAH CODE § 34A-2-413(1)(c)(ii) (not disabled if impairment does not "limit the employee's ability to do basic work activities"); *compare* 20 C.F.R. § 404.1520(a)(4)(iv) (not disabled if "you can still do your past relevant work"), *with* UTAH CODE § 34A-2-413(1)(c)(iii) (not disabled if impairments do not prevent employee from performing "the essential functions of the work activities for which the employee has been qualified"); *compare* 20 C.F.R. § 404.1520(a)(4)(v) (not disabled "if you can make an adjustment to other work" considering "your residual functional capacity and your age, education, and work experience"), *with* UTAH CODE § 34A-2-413(1)(c)(iv) (not disabled if employee "can[] perform other work reasonably available, taking into consideration the employee's (A) age; (B) education; (C) past work experience; (D) medical capacity; and (E) residual functional capacity").

sovereign's law—is not present here. To be sure, the legislature *had borrowed* from federal disability law. But then, in 1995, it gave it back. Thus, in the absence of a reason to invoke the *Maxfield* presumption, we interpret our permanent total disability statute according to the default assumption that our sovereign legislature enacts its own sovereign laws that this court then interprets using its plain meaning approach to statutory interpretation.

¶ 36 The concurrence's best argument to the contrary is that there are numerous structural similarities between the permanent total disability statute and federal disability law.[8] This is what the concurrence is getting at when it states that the permanent total disability statute "incorporat[es] numerous elements that are obviously imported from disability standards embedded in social security law"— supporting this contention with a footnote illustrating that "[f]our of [the] elements [of a federal disability claim] are mirrored in the Utah Workers' Compensation Act." *Infra* ¶ 74 & n.15.

¶ 37 This argument trades on an equivocation. Because while it is true that several elements of a permanent total disability claim are *conceptually similar* to several elements of a federal disability claim, those conceptually similar elements are all expressed in *different language* from their federal "mirror[s]." Of course if *language* in a state statute mirrors *language* in a federal statute, then that is a strong argument that the state statute is borrowing terms of art from the federal statute. This is the takeaway of our cases applying the

---

[8] The concurrence also argues that we have already recognized that the basic work activities provision incorporated federal law. *Infra* ¶¶ 60, 88–89. The concurrence points to a paragraph of our *Provo City* opinion, in which we stated that "[i]n defining what constitutes basic work activities, we look to identical language used in federal social security law . . . ." *Provo City*, 2015 UT 32, ¶ 28. But, as we have explained, *Provo City* did not mean to suggest that "federal social security law is an independent source of meaning for our permanent total disability statute—as opposed to persuasive authority that we may consult, when helpful, to aid us in the task of statutory construction." *Supra* ¶ 27 n.6. If the *Provo City* court had intended to suggest this, it would have presumably explained its reliance on federal law by reference to the presumption that our legislature intends to adopt foreign law when using foreign legal terms of art.

presumption articulated in *Maxfield*, which emphasize that it is a textual, word-based presumption. *See Nielsen v. State*, 2016 UT 52, ¶ 18, 391 P.3d 166 (test applies when legislature "borrows *terms* of art" (emphasis added) (citing *Maxfield*, 2012 UT 44, ¶ 31)); *State v. Canton*, 2013 UT 44, ¶ 28, 308 P.3d 517 ("The legislature is entitled to invoke *specialized legal terms* that carry an extra-ordinary meaning." (emphasis added)); *Maxfield*, 2012 UT 44, ¶ 31 (presumption applies "when *a word or phrase* is 'transplanted from another legal source'" (emphasis added) (citation omitted)). But when the state statute instead mirrors a federal *conceptual scheme*, and expresses that scheme in different language, it seems to us that this cuts against the presumption that the state statute has borrowed "terms of art" from federal law. To be sure, it has borrowed a conceptual scheme. But, by expressing this scheme in different language, it has declined to invoke the federal terms of art.[9]

¶ 38 The concurrence faults us not only for deviating from the federal courts' interpretation of a "limit," but also for interpreting the phrase "limit" in our basic work activities provision to impose a higher bar than the phrase "significant limit" imposes in federal disability law. *Infra* ¶ 92. And it is true that federal courts have interpreted the phrase "significant limit" to incorporate a "de minimis standard"—under which an impairment "significantly limits" a person's ability to work unless it establishes only "a slight abnormality or a combination of

---

[9] Nor can the concurrence even make the narrow argument that the legislature specifically intended to import the federal term of art "limit" from federal social security law—even if it otherwise intended the permanent total disability statute to have an independent meaning. This is because the federal term of art—the phrase the case law is aimed at interpreting—is not "limit"; it is "significantly limits." *See, e.g., Gray v. Comm'r of Soc. Sec.*, 426 F. App'x 751, 752 (11th Cir. 2011) (defining issue before it as whether "the ALJ misapplied the 'significantly limits' language of the regulations"); *Nieves v. Sec'y of Health & Human Servs.*, 775 F.2d 12, 14 (1st Cir. 1985) (describing federal disability law's "significant limitations standard"); *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984) ("The court . . . defined the 1980 term 'significant' limitation as (1) having a meaning, (2) deserving to be considered, and (3) not meaningless. The limitation must not be meaningless. This approach is, thus, identical to the 1968 language which states that the impairment must not be slight.").

slight abnormalities which would have *no more than a minimal effect* on an individual's ability to work." *Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989) (citation omitted). But the oddity that our interpretation of the term "limit" gives rise to a more demanding standard than the federal courts' interpretation of the phrase "significant limit" is not a function of our distorting the meaning of "limit." As we explain, the federal de minimis standard is simply not rooted in the plain meaning of the federal regulations at all; instead, it flows from policy concerns that are specific to the administration of federal disability law.

¶ 39 Here's what happened. In the 1980s, the federal courts became increasingly concerned that the Social Security Administration was interpreting the requirement that a disability claimant show a "significant limit" in such a way as to unduly restrict the number of people who could obtain federal social security disability benefits. *See Bowen v. Yuckert*, 482 U.S. 137, 156 (1987) (O'Connor, J., concurring) (explaining that by 1987 federal courts had "either enjoined the Secretary's use of the [significant impairment] regulation or imposed a narrowing construction upon it" based on statistical evidence that too many claimants were being denied disability based on their inability to show this element (footnotes omitted)). Thus, in the late 1980s— shortly before our legislature repudiated lockstep reliance on the federal disability scheme and replaced it with our own permanent total disability statute—many federal appellate courts adopted a sharply limiting construction of the phrase "significant limit." *See id.* at 156 n.2. Driven not by fidelity to text, but, instead, by an interest in correcting a perceived misadministration of federal disability law, the federal courts, in effect, wrote the term "significant" out—adopting the federal "de minimis standard." *See, e.g., Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (discussing "de minimis" standard for determining whether a claimant has a "significant limitation").

¶ 40 This means that federal law in this arena is of virtually no help to us at all. First, it was motivated by empirical concerns about the administration of a federal program that do not plague the administration of our permanent total disability statute. Second, and perhaps even more important, it is patent that federal law in this arena has rejected a plain meaning approach to interpretation. It is therefore unpersuasive. *See Nichols*, 2016 UT 19, ¶ 17 (our court follows a "plain meaning" approach to statutory interpretation).

¶ 41 And unsurprisingly—given that federal law has interpreted "significant limit" to mean, in effect, "insignificant limit"—federal disability law is, considered through the lens of plain meaning analysis, almost perversely wrong. Instead, as we have explained, the plain meaning of the phrase "limit on an employee's basic work activities" connotes something that impairs an employee's ability to perform the basic tasks that are essential prerequisites of employment—something that makes it unreasonable for an employer to demand work. *See supra* ¶¶ 29–30.

¶ 42 Thus, as *Provo City* recognized, *see supra* ¶ 24 & n.5, baked into the basic work activities provision is a definition of "limit" on which any limit must be meaningful or significant. We, of course, acknowledge the irony that, on our interpretation, "limit" means "significant limit" whereas on the federal interpretation "significant limit" means "de minimis limit." But this irony is the consequence of two different court systems employing two different modes of interpretation in two different statutory contexts. It is not an indictment of our plain meaning approach.

¶ 43 Two final comments on the concurrence. First, the concurrence believes that its interpretation of the basic work activities provision would not render that provision superfluous. It acknowledges that, on its interpretation, any permanent total disability claimant who can establish the "essential functions" element or the "other work reasonably available" element will also automatically be able to establish the basic work activities element—so, in this sense, the provision does no work. But it suggests that this provision can nonetheless "fulfill[] a threshold function" by "weed[ing] out baseless claims that should proceed no further because the claimant cannot identify any effect on an activity that is 'basic' to most jobs." *Infra* ¶ 99. And we agree with the concurrence that one valuable function of the basic work activities provision is to function as a threshold condition that weeds out meritless claims. Ironically, however, by holding that any limit on a basic work activity allows an employee to get past the threshold, the concurrence would gut this function of the basic work activities provision, making it so that whenever a claim would be weeded out by the basic work activities provision it would also clearly be weeded out by other elements of a permanent total disability claim. So we do not see how the concurrence's commitment to this threshold function of the basic work activities provision provides much support to its interpretation, and, concomitantly, we still believe that our interpretation helps avoid surplussage.

¶ 44 Finally, the concurrence worries that the interpretation of the basic work activities provision that we articulate today is "a fuzzy one" that "seems destined to bring disarray and unpredictability to a field that is designed for efficiency and ease of decision-making." *Infra* ¶ 78. As a practical matter, this criticism cannot be right. Our standard is the very same standard that the administrators of the workers compensation system have been using for years—a standard that looks to whether an employee's limitations are consistent with that employee's maintaining "a reasonable degree of flexibility, strength, endurance, mental capacity and ability to communicate." *Supra* ¶ 28 (quoting *Anderson v. Dee Warner Constr.*, 2007 UT Wrk. Comp. LEXIS 41 at *9).[10] We think a surer path to "disarray and unpredictability" lies in upending settled agency law in the absence of any evidence or argument that it has been misadministered. In any event, whether disarray and unpredictability is, indeed, our destiny will be tested one way or another, as we note that the legislature recently amended the statute to inject this putative fuzziness—or something very close to it— into the basic work activities provision. *See* 2016 Utah Laws 168 (requiring employees seeking permanent total disability benefits to show that they suffer from an impairment that "*reasonably* limit[s] the employee's ability to do basic work activities" (emphasis added)).

¶ 45 But perhaps the concurrence's criticism is meant theoretically: *in theory*, bright-line rules are more efficient and predictable than standards. Fair enough as a general rule, but, in the context of this statute, we do not think the concurrence's bright-line rule will deliver.

¶ 46 This is because the bright-line rule that the concurrence proposes fails to map to the natural way of thinking about the basic work activities provision and ultimately buries a "fuzzy" standard in another clause of that law. To see this, it is necessary only to examine

---

[10] The concurrence argues that *Anderson* has nothing to do with the definition of "limit" in the basic work activities provision because it "invokes the 'basic work activities' standard, not the limit clause." *Infra* ¶ 103. We disagree. *Anderson* looks to whether a claimant has a "*reasonable degree* of flexibility, strength, endurance, mental capacity and ability to communicate." *Anderson v. Dee Warner Constr. Co.*, 2007 UT Wrk. Comp. LEXIS 41 at *9 (emphasis added). This is centrally concerned with the extent of the limitation on the claimant's ability to perform basic work activities.

the concurrence's own attempt to explain our decision in *Provo City* in a way that permits it to coexist with the concurrence's test. The concurrence tells us that *Provo City* "simply holds that full range of motion in a worker's head and neck is not a matter that goes to 'basic work activities.'" *Infra* ¶ 83. Unlike on our reading—according to which *Provo City* stands for the proposition that without a showing of a significant limit on an employee's range of motion the employee cannot satisfy the basic work activities element of a permanent total disability claim, *supra* ¶ 24—the concurrence reads *Provo City* to stand for the proposition that "full range of motion in a worker's head and neck" is not a basic work activity, *infra* ¶ 83. True, says the concurrence, the employee in *Provo City* was *limited* in his ability to move his head or neck. But this is not a basic work activity. Thus, in *Provo City*, there was no need to inquire into the "*extent* or *degree*" of the limitation. *Infra* ¶ 84.

¶ 47  But of course, there was a need to inquire into the extent or degree of the employee's limitation in *Provo City*—even by the concurrence's lights. For, even on the concurrence's reading, *Provo City* "holds that *full* range of motion in a worker's head and neck is not a matter that goes to 'basic work activities.'" *Infra* ¶ 83 (emphasis added). How limited, then, must the range of motion in a worker's head and neck be before it impacts his ability to do basic work activities? At times, the concurrence appears to read *Provo City* to stand for the proposition that "neck flexibility" can never be a "basic work activity." *Infra* ¶ 83. But this is an absurd reading of *Provo City*: consider a claimant who cannot move his head at all coupled with expert testimony that he therefore cannot perform any category of work, including sedentary office work. So the Labor Commission must assess the degree of an employee's limitation—just as our opinion holds.

¶ 48  Because the Labor Commission cannot help but wade into questions of the extent to which an employee is limited in his or her ability to do basic work activities, the concurrence does not reduce "fuzziness" or otherwise simplify or clarify the Labor Commission's task. To the contrary, it complicates that task by forbidding the Labor Commission from wrestling with these problems in the most intuitive way—by thinking about how significant a limit must be before it counts as a limit on basic work activities. And it does so for the sake of a bright line: so that it can say that *any* limit on basic work activities satisfies the provision. So instead of thinking naturally about the problem, the concurrence requires the Labor Commission to bury its analysis of the degree of limitation in its assessment of whether it is dealing with a "basic work activity." This is unnecessary formalism.

¶ 49 We are unpersuaded by the concurrence and therefore adhere to the interpretation set out above: only those impairments that strike at the heart of the abilities and aptitudes that are necessary to most jobs—i.e., only those impairments that meaningfully inhibit an employee from performing the core tasks of a wide swath of jobs to such an extent that it would be unreasonable for an employer to ask the employee to perform those tasks—can be said to limit an employee's ability to do basic work activities. *Supra* ¶ 30.

### C. The Labor Commission's Determination that Mr. Oliver Failed to Satisfy the Basic Work Activities Element Is Supported by Substantial Evidence

¶ 50 The remaining question with respect to the Labor Commission's determination that Mr. Oliver failed to prove that he was limited in his ability to do basic work activities is whether substantial evidence supports that conclusion. Based in large part on the interpretive mistake we have already described, the court of appeals concluded that it does not.[11] We disagree.

---

[11] The court of appeals' substantial evidence determination in this case further highlights that its interpretation of the basic work activities provision is in tension with the standard of review that we employ when reviewing the Labor Commission's determination that an employee has, or has not, proven that one of his impairments imposes a limit on his basic work activities. In *Provo City*, we explained that the basic work activities provision poses a question of fact that an appellate court ultimately reviews under the substantial evidence standard of review. 2015 UT 32, ¶¶ 12–14, 345 P.3d 1242; *see also Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, 2007 UT 42, ¶ 33, 164 P.3d 384 (explaining that the elements listed in Utah Code section 34A-2-413(1)(c) are factual elements). The reason the basic work activities element poses a question of fact, as opposed to a question of law or a mixed question of fact and law, is that its resolution "depends on empirical evidence and expert testimony regarding an employee's ability to perform certain functions." *Provo City*, 2015 UT 32, ¶ 13.

The court of appeals' interpretation of the basic work activities provision converted the inquiry under that provision from a factual question into a simple matter of locating *some* limit on *some* work activity, without assessing the potentially intricate way in which that limit cuts to the heart of an employee's ability to meaningfully

(cont.)

¶ 51   In his brief to this court, Mr. Oliver points to evidence in the record that he suffers from pain, a "42% whole body impairment rating," and limitations on standing and lifting. He further points to the conclusion of the impartial medical panel that he may be absent from work occasionally due to left-leg swelling and that he may have to take occasional unscheduled breaks during the work day. But Mr. Oliver also acknowledges, without challenging, the Labor Commission's determination that he was capable of performing medium-duty work. This determination reflects the impartial medical panel's conclusion—which it reached after a comprehensive review of the medical evidence in this case—that "Mr. Oliver may function at a medium duty classification" and that he is able to "understand, concentrate, interact, commute, communicate, work, remain at work for the scheduled time, and cope with the changes of the work setting."

¶ 52   There is conflicting evidence in this case. Mr. Oliver presented medical and vocational evidence suggesting that he was in too much pain to be able to do basic work activities; Bulloch Construction, by contrast, presented Dr. Passey's medical opinion that Mr. Oliver could "perform just about any activities he wishes to do." It also called a vocational expert who testified that, based on Dr. Passey's medical opinion and a recent surveillance video showing Mr. Oliver performing manual labor, he believed that Mr. Oliver was able to do all activities that are required to obtain and maintain consistent, regular, full-time employment and could perform medium-duty work.[12] The medical panel's opinion confirmed Mr. Lancaster's vocational assessment.

¶ 53   There may have been a reasonable chain of inferences from the evidence before the Labor Commission to the conclusion that

_____

participate in the job market. Such an interpretation treats the application of the basic work activities more like a mixed question of law and fact of the sort that an appellate court would be required to review nondeferentially under the principles articulated in *Murray v. Utah Labor Commission*, 2013 UT 38, ¶ 24, 308 P.3d 461. This cannot be reconciled with the reality that the basic work activities provision ultimately poses a question of fact.

[12] As the Labor Commission noted, surveillance of Mr. Oliver indicated that he was "capable of undertaking and completing relatively strenuous tasks such as removing a fallen tree, staining a deck, and doing yard work."

Mr. Oliver was limited in his ability to do basic work activities. Certainly an employee's level of pain, ability to stand and lift, and ability to keep a regular employment schedule are all relevant to whether he or she is limited in the ability to do basic work activities. *Cf. Provo City*, 2015 UT 32, ¶¶ 29–30 (holding that substantial evidence supported the Labor Commission's finding that an employee was limited in his ability to do basic work activities where the employee testified that certain basic activities would incapacitate him for hours or days with nausea and pain). But Mr. Oliver has not argued that the Labor Commission improperly disregarded these considerations, and we do not reweigh the evidence on a substantial evidence review. *Becker v. Sunset City*, 2013 UT 51, ¶ 21, 309 P.3d 223. Rather, we look only to whether a reasonable mind might accept the evidence supporting the decision as adequate. *Martinez*, 2007 UT 42, ¶ 35. In this case, we conclude that substantial evidence supports the Labor Commission's determination.

## III. THE ESSENTIAL FUNCTIONS PROVISION

¶ 54 In its order denying Mr. Oliver's application for permanent total disability benefits, the Labor Commission found that Mr. Oliver had failed to prove that his impairments prevent him from performing the "essential functions" of a delivery truck driver—a job that the Labor Commission found Mr. Oliver to have been qualified for at the time of his work-related accident. *See* UTAH CODE § 34A-2-413(1)(c)(iii) (to establish a claim for permanent total disability benefits, an employee must prove that his or her impairments "prevent the employee from performing the essential functions of the work activities for which the employee has been qualified until the time of the industrial accident . . . ."). [13]

---

[13] The Labor Commission concluded that Mr. Oliver had been qualified to be a delivery truck driver at the time of his accident even though he never actually worked as a delivery truck driver until several years *after* his accident occurred. We do not decide today whether, for purposes of the essential functions element, an employee may have been qualified at the time of his accident for a job he never actually held, or if, instead, "the work activities for which the employee has been qualified until the time of the industrial accident" refers to work an employee has actually performed prior to the accident.

¶ 55 The court of appeals held that this determination was not supported by substantial evidence based on its conclusion that the record was "not clear" on whether Mr. Oliver had been qualified to be a delivery truck driver at the time of his accident. But as we have already explained, the employee bears the burden of proving each element of a permanent total disability claim. *See supra* ¶ 15. This means that the absence of record evidence in this case cuts against Mr. Oliver, not Bulloch Construction. It was up to Mr. Oliver to prove that he lacked the qualifications of a delivery truck driver; it was not Bulloch Construction's burden to introduce evidence of Mr. Oliver's employment qualifications.

¶ 56 We recognize that the burden of proof on this element requires an employee to prove a negative. Bearing this in mind, we emphasize that the employee's burden of production is not high. In the first instance, all the employee need adduce is competent testimony (by the employee or others) that the only job he or she was qualified to perform was the job he or she was working at the time of the injury. If the employer does not then challenge this testimony or otherwise introduce contrary evidence, this production—even if it comes in as minimal a form as a blanket statement by the employee about his or her qualifications—will ordinarily suffice to meet the employee's burden of proof on the essential functions element. But when, as here, an employer has fairly put at issue an employee's qualifications to do a particular job, the employee fails to address the issue with specific testimony or evidence at his peril. Certainly, on appellate review for substantial evidence, any lack of clarity in the record regarding whether the employee is qualified can only weigh against the employee (who bears the burden of proof), not the employer (who does not).

¶ 57 Finally, we note that the court of appeals erred when it informed its substantial evidence review by consulting extra-record information about the qualifications of delivery truck drivers compiled by the Federal Bureau of Labor Statistics. In appeals from formal administrative adjudications, reviewing courts are limited to the administrative record before them. *See* UTAH CODE § 63G-4-403(4) ("The appellate court shall grant relief only if, *on the basis of the agency's record*, it determines that a person seeking judicial review has been substantially prejudiced . . . ." (emphasis added)).

## CONCLUSION

¶ 58 The court of appeals misinterpreted the basic work activities provision of the permanent total disability statute. It also misallocated

the burden of proof and improperly considered information that was not contained in the administrative record. We reverse the court of appeals and uphold the Labor Commission's decision to deny Mr. Oliver's application for permanent total disability benefits.

———————

ASSOCIATE CHIEF JUSTICE LEE, concurring in the judgment:

¶ 59 The Utah Workers' Compensation Act prescribes a list of elements necessary to sustain a claim for "permanent total disability" benefits. One of those elements is at issue here. It requires a showing that "an impairment or combination of impairments . . . limit[s]" the claimant's "ability to do basic work activities." UTAH CODE § 34A-2-413(1)(c)(ii).[14]

¶ 60 We interpreted one clause of this element in our recent decision in *Provo City v. Utah Labor Commission*, 2015 UT 32, 345 P.3d 1242. In *Provo City* we interpreted the "basic work activities" clause. In so doing we noted that the permanent total disability standard incorporates "identical language" to that used in "federal social security law." *Id.* ¶ 28. With that in mind, we construed the Workers' Compensation Act to incorporate an established term of art in disability law. We noted that federal law "defines 'basic work activities' as 'the abilities and aptitudes necessary to do most jobs.'" *Id.* (quoting 20 C.F.R. § 404.1521(b) (2012)). And we applied that standard in concluding that a workers' compensation claimant's "ability to perform basic work activities" was supported by substantial evidence. *Id.* ¶¶ 28–29. *Provo City* noted the claimant's testimony that "certain basic activities, like walking, could cause his condition to worsen such that he could do nothing but rest for two or three days." *Id.* ¶ 30. And in light of that testimony we upheld the labor commission's determination that the worker's "basic work activities" were "limited." *Id.*

¶ 61 This case is the logical successor to *Provo City*. Here we are asked to interpret the "limit" clause of the same provision at issue in *Provo City*. We are asked to determine the nature or extent of the "limit" on basic work activities that must be proven to fulfill this element of the Workers' Compensation Act. The majority answers that question by

———————

[14] All references to this section of the code are to the version that predated the 2016 amendment noted by the majority. *See supra* ¶ 2 n.1.

reference to our opinion in *Provo City*. It says that *Provo City* supports its determination that the "limit" clause requires proof of a *significant* "limit" on those activities. *Supra* ¶ 24. Thus, the majority holds that a worker must show that his impairment "*significantly* hinder[s]" his "ability to *meaningfully participate* in the workforce" in order to establish this element of a permanent total disability under the Workers' Compensation Act. *Supra* ¶ 24 (emphasis added). Alternatively, the court says that the limitation required by statute must be "'reasonable'—in the sense that the limitation would make it unreasonable for an employer to ask an employee to perform the tasks that are basic prerequisites of successfully working a broad swath of jobs." *Supra* ¶ 29.

¶ 62 Applying this standard, the majority affirms the labor commission's determination that Mark Oliver was not "limited" in his ability to do "basic work activities." *Supra* ¶ 29. It holds, in other words, that Oliver "was not rendered practically incapable of performing the core tasks that are essential to a broad swath of different jobs." *Supra* ¶ 29. And in so doing the majority reverses the court of appeals' contrary conclusion—its holding that "the Commission's determinations were based on incorrect legal standards and were not supported by the record as a whole." *Oliver v. Labor Comm'n*, 2015 UT App 225, ¶ 22, 359 P.3d 684.

¶ 63   I agree with the judgment of the court but disagree with much of the majority's analysis—in particular the interpretive method the court applies in coming to its proposed legal standard. While evoking terms like "plain," "natural," or "intuitive" to justify its interpretation of the statutory term "limit," *supra* ¶¶ 24, 46, 48, the majority fails to explain how its chosen standard follows from past precedent, the linguistic context of the statute, or other principles of statutory interpretation. And I find no basis in the language of the Workers' Compensation Act—much less in the *Provo City* opinion—for the standard announced today. Thus, I write separately to set forth the standard that I would adopt and to articulate the grounds that I propose for resolving this case.

¶ 64 In the paragraphs below I first set forth the basis for my construction of the statute. Then I respond to the grounds articulated by the majority for its approach. And I close by explaining that I would nonetheless affirm the labor commission's decision on a separate, independent ground (its determination that Oliver has not established a

permanent total disability because Oliver was capable of performing a job for which he was previously qualified).

I

¶ 65 I would read "limit" to encompass *any* restraint or confinement on a worker's ability to perform basic work activities. That standard seems to me to follow from the text of the statute, from a settled canon of construction, and from the term-of-art meaning of "limit" in federal disability law.

A

¶ 66 The verb *limit* conveys only the idea of restraint or confinement. *See* THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1115 (2d ed. 1987) (defining limit as a verb as "to restrict by or as if by establishing limits" or "to confine or keep within limits" or "to fix or assign definitely or specifically"). It does not by itself convey a particular degree of restriction. *See also supra* ¶ 24 n.4 (conceding that the notion of a "limit" leaves room for "different degrees of restriction").

¶ 67 This is telling. It suggests that *limit* by itself—without an adverb or other modifier—encompasses *any* degree of restraint or confinement. This is the "plain" meaning of the statutory term. Without more, we have no non-arbitrary basis for selecting a degree of limitation that is not conveyed by the terms of the statute.

¶ 68 The majority deems its construction "natural" and "intuitive." *Supra* ¶ 46, 48. But that is just the majority judges' intuition speaking. *State v. Rasabout*, 2015 UT 72, ¶¶ 53–56, 356 P.3d 1258 (Lee, A.C.J. concurring) (discussing the importance of transparency when using linguistic intuition in deciding among possible meanings of a term). Nothing in the language of the statute says that the only *limit* that counts is one that "significantly hinder[s]" a worker's "ability to meaningfully participate in the workforce." *Supra* ¶ 24. We can call this limitation on *limit* "reasonable," *supra* ¶ 29, but that doesn't make it consistent with the statute's "plain language." It simply means that we find this particular limit on *limit* a sensible one.

¶ 69 I have no quarrel with that conclusion. If we were starting from scratch—selecting a standard that accords with our sense of good policy—then I would be fine with the majority's approach. But that is not the question presented. We are not asked to decide on a degree of *limit* that we find reasonable. We are asked to interpret the language of

the statute. And I find that language—the verb *limit* without any modifier—to sustain my interpretation and to undermine the majority's.

B

¶ 70 This conclusion is reinforced by a settled canon of statutory construction: We do not "infer substantive terms into the text that are not already there." *Arredondo v. Avis Rent A Car Sys., Inc.*, 2001 UT 29, ¶ 12, 24 P.3d 928. More specifically, and more to the point here, we do not infer "limiting modifiers . . . into the language of [a] statute." *See State v. Holm*, 2006 UT 31, ¶ 28, 137 P.3d 726.

¶ 71 This latter formulation of the canon fits this statutory context perfectly. *Limit*, as noted, bears no limitation or modifier. And the majority transgresses this canon in inferring a limitation that does not appear on the face of the statute. My approach avoids this problem. It accords with the statutory text as informed by the presumption against inferring "limiting modifiers" not set forth in the language of the statute.

C

¶ 72 My approach is also consistent with this court's analysis in the *Provo City* case. In that case we interpreted the *basic work activities* clause of the permanent total disability statute. In so doing we looked to federal disability law as a sort of "specialized dictionary" informing our interpretation of the parallel language in Utah's permanent total disability statute. A similar approach sustains the interpretation that I would adopt here.

I

¶ 73 Historically, the "permanent total disability" standard under the Workers' Compensation Act was tied expressly to federal disability law. Prior to amendments made in 1995, the Act stated that "[p]ermanent total disability for purposes of this chapter requires a finding by the commission of total disability, as measured by the substance of the sequential decision-making process of the Social Security Administration under Title 20 of the Code of Federal Regulations as revised." UTAH CODE § 35-1-67(1)(b) (1994).

¶ 74 In 1995, the legislature eliminated the express incorporation of the "sequential decision-making process of the Social Security Administration." S.B. 123, 51st Leg., Gen. Sess. (Utah 1995). Thus, the Workers' Compensation Act now prescribes its own standard of

"permanent total disability." Yet the Utah standard, while no longer verbatim the federal standard, still borrows substantially from federal law—incorporating numerous elements that are obviously imported from disability standards embedded in social security law.[15]

¶ 75 The provision at issue here is no exception. Under Utah law the worker is required to show that he "has an impairment or

---

[15] The federal standard has five elements. Four of those elements are mirrored in the Utah Workers' Compensation Act.

The first federal element considers whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). The Utah standard considers whether she is "gainfully employed." UTAH CODE § 34A-2-413(1)(c)(i).

The second federal element considers whether the claimant's impairment is severe, 20 C.F.R. § 404.1520(a)(4)(ii), and provides that an impairment is not severe "if it does not significantly limit [a person's] physical or mental ability to do basic work activities," 20 C.F.R. § 404.1522(a) The Utah standard considers whether the claimant "has an impairment or combination of impairments that limit the employee's ability to do basic work activities." UTAH CODE § 34A-2-413(1)(c)(ii).

The third federal element provides an alternative means of showing disability by proving "an impairment(s) that meets or equals one of [the] listings in appendix 1 . . . and meets the duration requirement . . . ." 20 C.F.R. § 404.1520(a)(4)(iii). There is no parallel provision in Utah law.

The fourth federal element considers whether the claimant "can still do [her] past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). The Utah standard considers whether the claimant can "perform[] the essential functions of the work activities for which the employee has been qualified until the time of the industrial accident or occupational disease." UTAH CODE § 34A-2-413(1)(c)(iii).

Finally, the fifth federal element considers the claimant's "residual functional capacity and [his] age, education, and work experience to see if [he] can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). The Utah standard considers whether the claimant can "perform other work reasonably available, taking into consideration the employee's: (A) age; (B) education; (C) past work experience; (D) medical capacity; and (E) residual functional capacity." UTAH CODE § 34A-2-413(1)(c)(iv).

combination of impairments that limit the employee's ability to do basic work activities." UTAH CODE § 34A-2-413(1)(c)(ii). This provision has an obvious counterpart in federal disability law. The parallel element under the Social Security Act requires proof of an impairment that "significantly limit[s]" the worker's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a).

¶ 76 We connected the dots between the state and federal provisions in our decision in *Provo City*. In that case, as noted, we considered the meaning of the "basic work activities clause." And in interpreting that clause our *Provo City* opinion noted the parallel terms and structure of the state and federal schemes and thus interpreted the Workers' Compensation Act to have incorporated a legal term of art from federal disability law. *See Provo City*, 2015 UT 32, ¶¶ 28–29. Specifically, we gave content to "basic work activities" by incorporating the federal definition of that clause. *See id.* ¶ 28 (quoting federal disability law in concluding that our workers' compensation standard "defines 'basic work activities' as 'the abilities and aptitudes necessary to do most jobs'").

¶ 77 I would follow a similar path here. I would interpret the "limit" clause as incorporating a term of art from federal (social security) disability law. And because the federal standard sets a low bar for "limit"—giving literal application to the full scope of this term (encompassing any non-*de minimis* impairment that may *bind*, *restrain*, or confine)[16]—I would interpret the Workers' Compensation Act to

---

[16] *Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) ("[A]n impairment can be considered as not severe, and the application rejected at the second stage of the sequential evaluation process, only if the impairment is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." (internal quotation marks omitted)); *Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989) ("Thus, a majority of the Supreme Court has adopted what has been referred to as a 'de minimis standard' with regard to step two severity standards . . . . [A]n impairment is found not severe . . . when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's

(cont.)

incorporate the same standard. I would hold that a worker can show that an impairment "limit[s]" her basic work activities if she can show that it has some non-*de minimis* effect of restraining or confining her from performing those activities.[17]

¶ 78 The above also further undermines the majority's contrary conclusion—its requirement of proof of a "significant" limitation that prevents the worker from "meaningfully" participating in the workforce, or in other words that would make it "unreasonable" for an employer to ask an employee to perform the basic functions of most jobs. *Supra* ¶¶ 24–29. That standard is a fuzzy one. It seems destined to bring disarray and unpredictability to a field that is designed for efficiency and ease of decision-making. A limitation deemed "significant" by one ALJ may justifiably be treated as insignificant by another. That is troubling, and another reason to disagree with the standard embraced by the court.

## II

¶ 79 The majority identifies three principal grounds for the standard it articulates: (a) the analysis in our *Provo City* opinion, (b) wording differences between the state and federal standards, and (c) canons of construction. I find none of them persuasive.

### A

¶ 80 The majority says that *Provo City* "requires employees to show more than that their impairment imposes 'some limitation' on their ability to do basic work activities." *Supra* ¶ 24 n.5. But the proffered basis for this requirement is only an inference from the *Provo City* opinion. And in my view the inference is unfounded.

¶ 81 The majority is right to say that the claimant in *Provo City* had alleged an impairment that "limited" his "full range of motion with his

ability to work." (emphasis omitted) (citing *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988))).

[17] That conclusion, of course, would not alone be sufficient to establish a permanent total disability. All other elements of the statute would have to be proven. This is illustrated by this case—and by my conclusion in part III below that Oliver is not eligible for permanent total disability benefits because he has not proven that he is incapable of performing a job for which he was previously qualified.

head and neck." *Provo City*, 2015 UT 32, ¶ 29. And the court is likewise accurate in its characterization of the *Provo City* court's conclusion that this evidence was insufficient to show that the claimant's "ability to perform most types of jobs was limited." *Id.* That conclusion, moreover, was rooted in our determination that this evidence "did not suffice to show that the employee suffered limitations that impacted his ability 'to perform most jobs.'" *Supra* ¶ 24 n. 5 (quoting *Provo City*, 2015 UT 32, ¶ 29).

¶ 82 It does not follow, however, that *Provo City* "requires employees to show more than that their impairment imposes 'some limitation' on their ability to do basic work activities." *Supra* ¶ 24 n.5. The majority's analysis conflates the "basic work activities" clause with the "limit" clause. *Provo City* was all about the former. It had nothing to say about the latter.

¶ 83 The *Provo City* opinion simply holds that full range of motion in a worker's head and neck is not a matter that goes to "basic work activities." We had no occasion in *Provo City* to decide *how much* of a limit on neck flexibility would be enough to satisfy this element of the permanent total disability standard because we concluded that neck flexibility was not a "basic work activity"—in that it was not something necessary to "perform most types of jobs." *Provo City*, 2015 UT 32, ¶ 29.

¶ 84 This analysis is entirely in keeping with the federal (social security) notion of "limit." Federal law lists examples of "[b]asic work activities," which it defines as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). Exemplary abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," cognitive functions like "[u]nderstanding, carrying out, and remembering simple instructions," and practical considerations like "[d]ealing with changes in a routine work setting." *Id.* In *Provo City*, we determined that "full range of motion" in a worker's neck is not a "basic work activity." *Provo City*, 2015 UT 32, ¶ 29. And that was the basis of our determination that, with respect to his neck impairments, the claimant in *Provo City* had failed to show that his "ability to perform most types of jobs was limited." *Id.* But, again, this analysis provided us no occasion to speak to the question presented here—to the *extent* or *degree* of a limitation on a basic work activity necessary to amount to a

"limit." We were simply saying that there was *no effect* on a basic work activity, so no analysis of *how much of an effect is needed* was necessary.[18]

¶ 85   That conclusion is confirmed by the alternative basis for our decision in *Provo City*. *Provo City*, as noted, ultimately affirmed the labor commission's determination that the claimant in that case *was* "limited" in performing "basic work activities." *Id.* ¶ 30. And it did so in a manner that is consistent with my approach and unsupportive of the majority's.

¶ 86   Our decision to affirm the labor commission in *Provo City* was based on alternative—and quite proper—"basic work activities" that *were* affected by the claimant's impairment. In affirming the labor commission we noted the claimant's testimony that "certain basic activities, like walking, could cause his condition to worsen such that he could do nothing but rest for two or three days." *Id..* And in light of that testimony we upheld the labor commission's determination that the worker's "basic work activities" were "limited." *Id.* Walking, unlike full range of motion in one's neck, is a matter that goes to a "basic work

---

[18] The majority seeks to turn one of the critiques I level against its approach against the standard that I propose. It does so by insisting that the "basic work activities" standard that I describe introduces the same kind of fuzziness or subjectivity that I find in the majority's "limit" formulation. *See supra* ¶ 48. But that misses my point. My objection is not to subjective standards generally. *See State v. Rushton*, 2017 UT 21, ¶ 60 n.7, 395 P.3d 92 (Lee, A.C.J. concurring). It is to the introduction of fuzzy standards that bear no relation to the statutory text. *Id.* (Lee, A.C.J. concurring) (noting that where an "explicit component of the statutory test" is fuzzy "we are in no position to write it out of the law" but should "do our best to bring clarity to the analysis"). The "basic work activities" standard necessarily requires an inquiry into the extent of a worker's ability to do things essential to most jobs. I endorse that standard because it is written clearly into the statute. The same cannot be said of the "limit" standard articulated by the majority. We need not and should not compound the fuzziness of the inquiry by adding an additional layer of subjectivity—into whether the worker's disability "significantly hinder[s]" his "ability to meaningfully participate in the workforce." *Supra* ¶ 24. I reject that standard because I find no basis for it in the statute. The problem of fuzziness is a negative side effect, not the core problem.

activity" under the federal standard. *See* 20 C.F.R. § 404.1522(b) (defining "basic work activity" to include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"). We said nothing about the *extent* of the required "limit" on these basic work activities in *Provo City*. We simply credited the claimant's testimony that "certain basic activities, like walking, could cause his condition to worsen such that he could do nothing but rest for two or three days." *Provo City*, 2015 UT 32, ¶ 30. And we held that that was enough to sustain the labor commission's determination that the worker's "basic work activities" were "limited." *Id.*

¶ 87   *Provo City* thus does not answer the question presented here regarding the *extent* of the "limit" clause. It speaks only to the "basic work activities" clause. And it does so in a manner undermining rather than supporting the standard adopted by the majority in this case.

B

¶ 88   The majority concedes that our *Provo City* opinion invokes federal law as a basis for interpreting the legal terms of art that appear in the permanent total disability standard in the Workers' Compensation Act. *Supra* ¶ 27 n.6. But the court declines to interpret the Act as incorporating legal terms of art that are transplanted from federal disability law in this case. Instead it says that federal disability standards are simply "persuasive authority that we may consult, when helpful." *Id.*

¶ 89   I find that a little puzzling. Of course we are not *bound by federal law* in interpreting the *Utah Workers' Compensation Act*. So to that extent I agree that federal law is at most "persuasive," and that we are not obligated to interpret the Utah Workers' Compensation Act in lock-step with federal disability law. But that is not my point. Nor is it the inference that I would draw from *Provo City*. The *Provo City* opinion did not invoke federal disability law as "authority" for its decision. It simply acknowledged that the terms of the Workers' Compensation Act are largely drawn from federal disability law. And it said what we have said on numerous occasions—that legal terms transplanted from other areas of law are understood to bring their "soil" with them from those other fields. *See, e.g.*, *Nielsen v. State*, 2016 UT 52, ¶ 18, 391 P.3d 166; *State v. Canton*, 2013 UT 44, ¶ 28, 308 P.3d 517; *Maxfield v. Gary Herbert*, 2012 UT 44, ¶ 31, 284 P.3d 647.

¶ 90 In that sense the federal definition of "limit" is more than "persuasive authority that we may consult" if we deem it "helpful." It is a basis for interpreting the legal term of art—the "limit" clause—that appears in our statute. The majority overrides the established, term-of-art understanding of "limit" in its opinion. And in my view it identifies no persuasive ground for so doing.

¶ 91 The court's proffered reason for finding the federal standard "unhelpful" is its identification of a difference in the wording of the two provisions. Specifically, the court notes that the social security standard "requires a finding of a 'significant limit'" on basic work activities, while our Utah workers' compensation standard speaks only of a "limit." *Supra* ¶ 27 n.6. And in light of that difference the majority rejects the federal standard and adopts its own preferred standard instead.

¶ 92 The court's premise is correct. This is an instance in which the wording of our law is not quite identical to the federal source from which it was initially drawn. And I have no quarrel with the general idea that such a difference could be a ground for deciding that our legislature has departed from the usual paradigm of borrowing legal terms of art from federal disability law. The problem, however, is that the wording difference identified by the court cuts directly against the standard that it adopts in its decision. Federal law speaks in terms of a "significant limit" and our statute is phrased in terms of only a "limit." So, if anything, the inference to be drawn is that the Utah Legislature deliberately omitted the term "significant" in order to align its standard more closely with the standard employed in federal cases. Yet the majority allows the difference in wording to cut precisely in the opposite direction. It interprets the *elimination* of the word "significant" in our state statute as an indication that the legislature meant to *require* proof of a "significant" limit on basic work activities. *See supra* ¶ 24 (requiring proof that the limit on work activities be "significant").

¶ 93 That makes no sense to me. I see nothing in the Workers' Compensation Act that undercuts the premise of our *Provo City* opinion—which is that our permanent total disability standard incorporates legal terms of art imported from federal disability law.

C

¶ 94 The majority also seeks to sustain its standard on the basis of canons of construction. It says that its construction of the "limit" clause

is supported by the presumption against surplusage and the "'absurd consequences' canon." *Supra* ¶¶ 25, 27.

¶ 95   In support of the first point the court cites other elements of the standard for establishing a permanent total disability—inability to perform "essential functions" of work for which the worker has been qualified and inability to perform "other work reasonably available." *Supra* ¶ 26. The court also notes that "[e]ach of these provisions can be met only if an employee suffers from some limitation on the ability to do some common workplace activity." *Supra* ¶ 26. And for that reason the court concludes that the "limit" clause must require proof of a "significant" degree of limitation. Otherwise, the court says, "any time an employee established either the 'essential functions' element or the 'other work reasonably available' element, that employee would automatically establish that he or she had a limit on the ability to do basic work activities." *Supra* ¶ 26. And in the majority's view that would rob the "limit" clause of independent meaning—a view that would run counter to the presumption against surplusage. *Supra* ¶ 26.

¶ 96   The majority's "absurd consequences" point is a corollary to this one. Invoking this canon, the court says that "[i]f proof of any limit, no matter how slight, were enough for employees to establish that they are limited in their ability to do basic work activities, then it is conceivable that a person could prove a permanent total disability based on a slight limp, the occasional headache, or some other minimal physical or mental limitation." *Supra* ¶ 27.

¶ 97   The consequence imagined by the majority would indeed be absurd. And if the federal disability standard would sustain a right to "permanent total disability" upon mere proof of any slight limit on basic work activities (like walking or carrying out simple instructions), then I would agree that the "limit" required by statute must be a significant or material one. But that is not what the federal standard entails.

¶ 98   The flaw in the majority's analysis is its failure to credit the role of the "limit" clause in the greater statutory scheme. Proof of a "limit" on basic work activities does not by itself sustain a right to permanent total disability benefits. Several other elements must be established to sustain a showing of a permanent total disability— including the worker's inability to perform "essential functions" of jobs he has been qualified to do and the inability to perform "other work reasonably available." And a worker with only a "slight limp" or an

"occasional headache" would be unable to satisfy these elements, and thus would not qualify for permanent total disability benefits on that basis.

¶ 99  The federal standard, moreover, does not render the "limit" clause meaningless. In federal law the "limit" clause fulfills a threshold function. It weeds out baseless claims that should proceed no further because the claimant cannot identify any effect on an activity that is "basic" to most jobs.[19] Analysis of this question is relatively simple and straightforward because it is limited to review of the medical evidence submitted by the claimant. *See, e.g., Higgs v. Bowen*, 880 F.2d 860, 862–64 (6th Cir. 1988) (per curiam). And where the claimant fails to meet this threshold showing it provides a basis for rejecting the claim without the "waste[d] effort and expense" of assessing the claimant's "vocational profile." *Id.* at 864.[20]

¶ 100  The Utah scheme does not expressly require the "sequential" analysis of permanent total disability prescribed by federal law. *See* 20 C.F.R. § 404.1520(a)(4) ("The sequential evaluation process is a series of five 'steps' that we follow in a set order."). Our statute simply lists the various elements of permanent total disability, without requiring that they be analyzed in any particular order. *See* UTAH CODE § 34A-2-413(c). But the "limit" clause can still fulfill the function that it performs in federal law—of weeding out meritless claims at a threshold level. And the prospect of that application preserves independent meaning

---

[19] *McDonald v. Sec'y of Health and Human Servs.*, 795 F.2d 1118, 1122 (1st Cir. 1986) ("The five remaining [circuit] courts have upheld the regulation, but only if" the severity requirement is used merely "to screen out totally frivolous claims." (citations omitted)); *Santiago Serra v. Sec'y of Health and Human Servs.*, No. 90-1066, 1990 WL 152332, at *1 (1st Cir. Sep. 10, 1990) (per curiam) ("[The "not severe" requirement] is designed to do no more than screen out groundless claims . . . (citations and internal quotation marks omitted)).

[20] The majority claims that my standard is so low that it would fail to weed out any claims. *See supra* ¶ 43. That is not correct. Under my standard the claimant still bears the burden of producing medical evidence of a limit on an activity that is required to perform most jobs. Not all claimants will be able to do that.

for the "limit" clause, and thus defeats the majority's reliance on the presumption against surplusage.

D

¶ 101 For the above reasons, the majority's standard finds no support in precedent, in statutory text, or in canons of construction. That should take us back to the plain language of the statute—to the requirement of proof that an impairment "limit[s]" a claimant's "ability to do basic work activities." UTAH CODE § 34A-2-413(1)(c)(ii). And in my view we should read the reference to "limit" as an incorporation of the federal (social security) standard for this term—a standard that gives literal application to the full scope of this term, encompassing *any degree* to which an impairment may *bind*, *restrain*, or *confine* a worker's "basic work activities."

¶ 102  The majority adds a range of modifiers that do not appear on the face of the statute. Instead of crediting *any* "limit," the court says that only "significant" limits should count. *Supra* ¶ 24. Elsewhere the court frames the standard a bit differently. It says that a claimant must show that the "limit" on basic work activities is one that "significantly hinder[s]" his "ability to *meaningfully participate* in the workforce" in order to establish this element of a permanent total disability under the Workers' Compensation Act. *Supra* ¶ 24. Alternatively, the court says that the limitation required by statute must be "'reasonable'—in the sense that the limitation would make it unreasonable for an employer to ask an employee to perform the tasks that are basic prerequisites of successfully working a broad swath of jobs." *Supra* ¶ 29.

¶ 103  I am unsure what these standards will mean in practice. At this stage I do not think we are in any position to say that our approach is "in keeping with the Labor Commission's long-standing test" on this element.[21] *Supra* ¶¶ 28, 45. The majority quotes only a pre-*Provo City*

---

[21] I am even more uncomfortable with the sweeping conclusion that "the legislature recently amended the basic work activities provision to largely mimic the Labor Commission's statutory gloss." *Supra* ¶ 44. The proper interpretation of the recent amendment to the statute is not presented to us here. We have no briefing on the proper construction of the amended statutory language, much less on whether the new provision is consistent with a body of administrative decisions (which are also not before us for review).

case that invokes the "basic work activities" standard, not the limit clause. *See supra* ¶ 28, (quoting *Anderson v. Dee Warner Constr.*, 2007 UT Wrk. Comp. LEXIS 41, at *9). With respect to the term "limit," the commission in *Anderson* determined that "this provision only requires that all Mr. Anderson's impairments 'limit' his ability to do basic work activities—the provision does not require that the impairments totally preclude or prevent such work activities." *Anderson*, 2007 UT Wrk. Comp. LEXIS 41, at *9. Unlike the present case, the commission in *Anderson* did not apply the "reasonable limit" standard adopted by the majority. Ultimately, moreover, we owe no deference to the labor commission's interpretation of the governing statute. *See Ellis-Hall Consultants v. Pub. Serv. Comm'n*, 2016 UT 34, ¶ 27, 379 P.3d 1270. So I think we would do better to simply articulate our understanding of the applicable test, and leave to future disputes the question of whether and to what extent we are embracing the labor commission's past practices.

III

¶ 104  For the above reasons I would apply the federal formulation of a "limit" on basic work activities. And I would conclude that the labor commission applied an erroneous legal standard in determining that Oliver had failed to establish that he suffered an impairment that limited his ability to perform basic work activities. Yet I would nonetheless affirm the labor commission's determination that Oliver failed to establish a permanent total disability. I would do so under the "essential functions" element of the statutory standard. I find the majority's analysis of this issue persuasive. And I would affirm the labor commission on the ground that Oliver failed to establish that he was unable to perform the "essential functions" of a job for which he was qualified at the time of his accident (that of a delivery truck driver). *See supra* ¶¶ 54–57.

---