**2019 UT App 148**

## THE UTAH COURT OF APPEALS

MACY'S SOUTHTOWNE CENTER,
Petitioner,

*v.*

LABOR COMMISSION AND DIAHANN T. JENSEN,
Respondents.

Opinion
No. 20180118-CA
Filed August 29, 2019

Original Proceeding in this Court

Theodore E. Kanell and Daniel E. Young, Attorneys
for Petitioner

Loren M. Lambert, Attorney for Respondent
Diahann T. Jensen

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES KATE APPLEBY and RYAN M. HARRIS concurred.

POHLMAN, Judge:

¶1      Macy's Southtowne Center (Employer) petitions for
review of the Labor Commission's preliminary award of
permanent total disability benefits in favor of Diahann T. Jensen
(Claimant). Employer challenges the Commission's findings
regarding Claimant's maximum medical improvement (MMI)
and her ability to perform other work reasonably available. We
conclude that substantial evidence supports the Commission's
findings, and we therefore decline to disturb its order.

BACKGROUND

¶2      Claimant sustained a lower-back injury while working as
a sales associate for Employer in April 2007. Claimant sought
treatment for her injury, and Employer accepted liability, paid

her temporary total disability compensation, and agreed in 2008 to permanent partial disability compensation based on an impairment rating of 13% of her lower back.

¶3     Claimant returned to work in October 2012 and worked for Employer for another month, but because she was "unable to think clearly or perform the physical aspects of her job duties," she found "a more sedentary job" with another company from December 2012 to July 2013. She could not continue in that position, however, due to chronic pain and side effects of medication.

¶4     In 2015, Claimant filed an application for a hearing, seeking permanent total disability compensation. The administrative law judge (ALJ) entered a preliminary award of permanent total disability benefits to Claimant after an evidentiary hearing. On Employer's motion for review, the Commission set aside the preliminary award and remanded the matter for referral to a medical panel on the issue of Claimant's medical stability.

¶5     The appointed medical panel, consisting of two experts in occupational medicine, concluded that Claimant had reached MMI, i.e., "medical stability from her work-related low-back injury." It explained that her condition "has been stable since 2015—after fusion and trial with spinal cord stimulator ended." After receiving this report, the ALJ again found that Claimant was entitled to a preliminary award of permanent total disability benefits. Employer filed another motion for review with the Commission.

¶6     The medical record before the Commission did not contain treatment records pertaining to Claimant's work injury that predated 2012, but the Commission found evidence that Claimant underwent a discectomy in 2007. Claimant also underwent fusion surgery involving hardware placement in August 2013 and later underwent additional treatment to address a mal-positioned screw and to remove the hardware

fixation system. When Claimant continued to experience lower-back pain, she had a spinal cord stimulator implanted in August 2014.

¶7    Eight months later, a doctor (Doctor) assessed Claimant with a 12% whole-person impairment rating for her lumbar-spine fusion. On May 12, 2015, Doctor wrote a letter outlining Claimant's capacity and stating that Claimant had reached MMI. On July 2, 2015, a physician assistant (Physician Assistant) for Claimant's surgeons stated that Claimant was unable to work due to chronic lower-back pain. This was the earliest date in the medical records that indicated Claimant could not work.

¶8    In December 2015, Claimant's functional capacity was evaluated. The resulting evaluation showed that Claimant could function only at "the sedentary physical-demand level for a maximum of 0–3 hours per day and could sit, stand, and walk on an occasional basis." It also showed that she "was capable of frequently reaching, gripping, writing, typing, and fingering, but she was unable to complete any task in a constant capacity and was limited to lifting no more than five pounds."

¶9    A consultant for Employer (Employer's Expert) also evaluated Claimant. He concluded that Claimant "could not work because her restrictions would be excessive." He also opined that "there was no evidence of a stable lumbar-spine fusion" in Claimant's records, and he offered various, unexplored "potential causative factors" for her condition. Employer's Expert also wrote a letter, dated March 13, 2016, in which he explained that he was unwilling to declare that Claimant had reached MMI "based on an absence of etiology for the complaints secondary to her second postoperative course."

¶10    After considering the evidence and the medical panel report concluding that Claimant reached MMI, the Commission determined that Claimant was permanently and totally disabled. Because MMI is a prerequisite to a finding of permanent total disability, the Commission first had to determine whether

Claimant had reached MMI. Although Claimant continued to treat her lower-back injury, the Commission reasoned that MMI "does not depend on whether [Claimant] receives treatment" but instead "depends on whether she materially improves." And because Doctor and the medical panel both opined that Claimant "has not seen and will not experience material improvement regarding her work-related low-back condition after 2015," the Commission concluded that Claimant was "medically stable . . . such that her claim for permanent disability benefits [was] ripe for adjudication."

¶11 The Commission then evaluated whether Claimant had demonstrated that she was permanently and totally disabled. *See* Utah Code Ann. § 34A-2-413(1)(b)(ii) (LexisNexis Supp. 2018).[1] As relevant here, the Commission evaluated whether Claimant had met her burden to show that she "has an impairment or combination of impairments that reasonably limit [her] ability to do basic work activities." *See id.* § 34A-2-413(1)(c)(ii). In so doing, the Commission noted that Claimant was "severely restricted in her ability to lift" and could engage in "only occasional walking, standing, and sitting due to her low-back problems." These restrictions led the Commission to conclude that Claimant was "not meaningfully able to perform the core tasks that are basic prerequisites to employment" and that she had met her burden on this element of her claim.

¶12 The Commission also evaluated whether Claimant had met her burden of showing that her lower-back impairment prevented her from performing the essential functions of the work activities for which she had been qualified until the 2007 work injury. *See id.* § 34A-2-413(1)(c)(iii). Though this element typically requires the Commission to compare a claimant's work restrictions to the duties of her past employment, the

---

1. This statute has been amended since the relevant time, but because these amendments are not material to our analysis, we cite the current version of the statute.

Commission found that Physician Assistant's July 2015 opinion that Claimant was unable to work, due to chronic lower-back pain, was "strong," uncontradicted evidence "sufficient to show that [Claimant] cannot perform the work for which she was qualified at the time of the accident."

¶13 The Commission next evaluated whether Claimant had met her burden to establish that she cannot perform "other work reasonably available" in light of her age, education, work experience, and her medical and functional capacities. *See id.* § 34A-2-413(1)(c)(iv). The Commission noted that Claimant's functional capacity allowed her to "perform at the sedentary physical-demand level for a maximum of 0–3 hours per day," and it cited Employer's Expert's opinion that Claimant "could not work because her restrictions would be excessive" to conclude that Claimant had met her burden on this element of her claim as well.

¶14 The Commission also addressed Employer's contention that no evidence supported the use of the date of July 2, 2015, as the date for when Claimant became entitled to permanent total disability benefits. The Commission explained that the date came from Physician Assistant, who concluded that Claimant "was unable to work as of that date." The Commission also explained that this date was "unchallenged in the medical record" because even Employer's Expert did not dispute that Claimant was unable to work.

¶15 Accordingly, the Commission affirmed the ALJ's second preliminary award of permanent total disability benefits, which awarded Claimant benefits as of July 2, 2015. Employer now seeks judicial review of the Commission's order.

ISSUES AND STANDARD OF REVIEW

¶16 On review, Employer asserts two errors in the Commission's order awarding permanent total disability

benefits to Claimant. First, Employer contends that "the Commission's finding of maximum medical improvement is not based on the medical evidence" and therefore is "not supported by substantial evidence." Second, Employer contends that the Commission erred in finding that Claimant was unable perform other work reasonably available because Claimant "did not present any evidence of other work reasonably available and whether she could perform that work."

¶17 This court's authority to review the Commission's decision is derived from the Administrative Procedures Act. Utah Code Ann. § 63G-4-403(1) (LexisNexis 2016); *Provo City v. Utah Labor Comm'n*, 2015 UT 32, ¶ 8, 345 P.3d 1242. That Act provides, among other things, that we may grant relief if we determine that the Commission "substantially prejudiced" a petitioner by basing its action upon a factual determination "that is not supported by substantial evidence when viewed in light of the whole record before the court." Utah Code Ann. § 63G-4-403(4)(g). A challenge to the Commission's finding of fact is reviewed for substantial evidence. *See Provo City*, 2015 UT 32, ¶ 8. In this case, both alleged errors amount to attacks on factual determinations made by the Commission and are therefore subject to substantial evidence review. *See id.* ¶¶ 12, 14 (stating that "whether an employee can perform other work reasonably available . . . is a question of fact" and reviewing the Commission's finding on the issue for substantial evidence); *Griffith v. Industrial Comm'n of Utah*, 754 P.2d 981, 983–84 (Utah Ct. App. 1988) (explaining that "medical stabilization," i.e., MMI, "is a factual question to be determined by medical evidence contained in the record" and considering whether substantial evidence supported the Commission's finding of medical stabilization).

¶18 "A decision is supported by substantial evidence if there is a quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *Provo City*, 2015 UT 32, ¶ 8 (cleaned up). "In conducting a substantial evidence review, we do not reweigh the evidence and

independently choose which inferences we find to be the most reasonable." *Id.* (cleaned up). "Instead, we defer to [the Commission's] findings because when reasonably conflicting views arise, it is the [Commission's] province to draw inferences and resolve these conflicts." *Id.* (cleaned up).

ANALYSIS

## I. Maximum Medical Improvement

¶19 Employer challenges the Commission's finding that Claimant reached MMI, asserting that the Commission improperly found Claimant's MMI as of July 2, 2015. Employer contends that "[t]here is no substantial evidence supporting this finding because there was no evidence presented regarding [Claimant's] condition after removal of the spinal stimulator and because the July 2, 2015 date for MMI is not supported by substantial evidence."

¶20 Under Utah caselaw, "medical stabilization" or "the MMI" is "the date that the period of healing has ended and the condition of the claimant will not materially improve and is thus the critical point for termination of temporary disability." *Bade-Brown v. Labor Comm'n*, 2016 UT App 65, ¶ 6 n.1, 372 P.3d 44 (cleaned up). "Once healing has ended, the permanent nature of the claimant's disability can be assessed and benefits awarded accordingly."[2] *Rekward v. Industrial Comm'n of Utah*, 755 P.2d 166,

---

2. The purpose of temporary disability benefits is "to provide an income for the injured party until [the party] is able to return to work or to receive permanent disability benefits," *Reddish v. Sentinel Consumer Products*, 771 P.2d 1103, 1105 (Utah Ct. App. 1989); *see also Booms v. Rapp Constr. Co.*, 720 P.2d 1363, 1366 (Utah 1986), whereas the purpose of permanent total disability benefits is to compensate injured workers who cannot return to work, *see* Utah Code Ann. § 34A-2-413 (LexisNexis Supp. 2018); *see also*

(continued…)

169 (Utah Ct. App. 1988) (cleaned up). The concept of MMI is "independent of" the claimant's ability to return to work. *Reddish v. Sentinel Consumer Products*, 771 P.2d 1103, 1104 (Utah Ct. App. 1989).

¶21 On review, Employer first contends that Claimant had a spinal stimulator removed after the March 22, 2016 hearing and that "[w]ithout evidence of [Claimant's] current condition after removal of the spinal stimulator, the Commission cannot state that the period of healing has ended." The Commission rejected this argument, reasoning that Claimant "may be considered medically stable from her work injury even if she continues to treat the injury but her condition does not materially improve." (Citing *Booms v. Rapp Constr. Co.*, 720 P.2d 1363, 1366 (Utah 1986).) Because Doctor and the medical panel both opined that Claimant "has not seen and will not experience material improvement regarding her work-related low-back condition after 2015," the Commission concluded that Claimant was "medically stable." Employer has not shown error in the Commission's reasoning.

¶22 Second, Employer contends that although "[s]everal dates for MMI are presented in the record," "[n]one of them are July 2, 2015," and that therefore "the Commission's finding of MMI on July 2, 2015 is not supported by substantial evidence." Employer further contends that the "Commission's reliance on [Claimant's] inability to work to support a finding of MMI is erroneous" because Claimant's inability to work "has no bearing on whether her period of healing has ended."

---

(…continued)
*Oliver v. Utah Labor Comm'n*, 2017 UT 39, ¶ 16, 424 P.3d 22 (describing the "core question" for a permanent total disability claim as "whether, notwithstanding his or her impairments, the employee can participate in the workforce").

¶23 We reject this argument because it rests on the flawed premise that the Commission found that Claimant reached MMI on July 2, 2015. To the contrary, the Commission found that Claimant reached MMI in 2015 rather than specifically on July 2, 2015.

¶24 We also agree with the Commission that Employer's argument about July 2, 2015, "pertains to the date on which [Claimant's] entitlement to permanent total disability benefits would begin," not to the date of MMI. In the Commission's decision, July 2, 2015, is the date when Claimant became entitled to permanent total disability benefits. This decision relied on the opinion of Physician Assistant, who concluded that Claimant was unable to work as of July 2, 2015. We cannot fault the Commission for using this date to start Claimant's benefits. After all, the permanent total disability statute requires that the injured worker be unable to return to work. *See* Utah Code Ann. § 34A-2-413(1)(b)–(c) (LexisNexis Supp. 2018).

¶25 We also conclude that the Commission's determination that Claimant had reached MMI as of 2015 is supported by substantial evidence. As the Commission found, Doctor opined in a letter, dated May 12, 2015, that Claimant had reached MMI, and the medical panel determined that she had been "stable since 2015." This evidence was "adequate to convince a reasonable mind to support a conclusion" that Claimant had reached MMI in 2015, and it was the Commission's prerogative to rely on Doctor's and the medical panel's opinions in making its MMI finding. *See Provo City v. Utah Labor Comm'n*, 2015 UT 32, ¶ 8, 345 P.3d 1242 (cleaned up).

## II. Other Work Reasonably Available

¶26 Employer challenges only one element of Claimant's claim for permanent total disability benefits: whether she cannot perform other work reasonably available. *See generally Provo City v. Utah Labor Comm'n*, 2015 UT 32, ¶ 6, 345 P.3d 1242 ("[T]he permanent total disability statute requires workers to prove six

elements . . . ."). The "other work reasonably available" element is established if the employee shows by a preponderance of the evidence that "the employee cannot perform other work reasonably available, taking into consideration the employee's: (A) age; (B) education; (C) past work experience; (D) medical capacity; and (E) residual functional capacity." Utah Code Ann. § 34A-2-413(1)(c)(iv) (LexisNexis Supp. 2018). The element "asks if, given [the employee's] limitations, there is any other reasonably available work for the employee to do." *Oliver v. Utah Labor Comm'n*, 2017 UT 39, ¶ 16, 424 P.3d 22. A failure to prove this (or any other) element defeats the claim for permanent total disability benefits. *See Provo City*, 2015 UT 32, ¶ 6.

¶27 According to Employer, Claimant "failed to present any evidence" of "what work is or is not reasonably available" given her ability "to do sedentary work for one to three hours a day." Employer asserts that the Commission's finding on the "other work reasonably available" element impermissibly relied on its findings on another element of the claim, namely, the "basic work activities" element, which "asks whether, irrespective of specific employment prospects, the employee retains the core functionality necessary to meaningfully participate in the workforce." *Oliver*, 2017 UT 39, ¶ 16; *see also* Utah Code Ann. § 34A-2-413(1)(c)(ii) (requiring proof, by a preponderance of the evidence, that "the employee has an impairment or combination of impairments that reasonably limit the employee's ability to do basic work activities"). Employer argues that the Commission "speculated that because [Claimant] has significant impairments, she also could not perform the duties that may be currently available," and that the "Commission had no foundation to make this conclusion because no evidence was presented on what jobs are currently available and what the duties are of those jobs."

¶28 We agree with Employer that Claimant bore the burden of proving this element of her permanent total disability claim by a preponderance of the evidence. *See Oliver*, 2017 UT 39, ¶ 15. The elements of that claim "are all specific inquiries into an

employee's ability to work" and seek to resolve whether, notwithstanding impairments, the employee "can participate in the workforce." *Id.* ¶ 16. And while we agree with Employer that satisfying one element of a permanent total disability claim cannot automatically satisfy another element, *see id.* ¶ 26, we disagree with Employer's suggestion that evidence relevant to one element cannot be relevant to another element. Indeed, our supreme court has explained that the "basic work activities" and "other work reasonably available" elements are related and that both are met "only if an employee suffers from some limitation on the ability to do some common workplace activity." *Id.*

¶29 Contrary to Employer's contention, we also conclude that the record contains substantial evidence to support the Commission's determination that Claimant proved she cannot perform other work reasonably available. To begin, we note that "the burden of proof on this element requires an employee to prove a negative," and the Utah Supreme Court has stated that in such circumstances "the employee's burden of production is not high." *Id.* ¶ 56. Regarding the "other work reasonably available" element, the court has also instructed that "evidence of the extent of an employee's impairment, when combined with the Labor Commission's good common sense and general understanding of the job market, will often be enough to satisfy the employee's burden of proof on this element."[3] *Quast v. Utah Labor Comm'n*, 2017 UT 40, ¶ 27, 424 P.3d 15.

---

3. Employer suggests that this statement in *Quast* is dicta and "is not controlling in this case." But the Utah Supreme Court appears to have deliberately made this statement "for the guidance of the bench and bar" on a point of law, and it is therefore judicial dicta, which we are obligated to follow. *See Ortega v. Ridgewood Estates LLC*, 2016 UT App 131, ¶ 14 n.4, 379 P.3d 18. We reject Employer's suggestion that *Quast* is not controlling.

¶30    Here, the Commission considered the extent of Claimant's impairment. For instance, the results of her functional capacity evaluation showed that she could "perform at the sedentary physical-demand level for" only "a maximum of 0–3 hours per day." *See* Utah Code Ann. § 34A-2-413(1)(c)(iv)(E). This evaluation also showed that she was "unable to complete any task in a constant capacity." Significantly, even Employer's Expert recognized that Claimant "could not work because her restrictions would be excessive."

¶31    The Commission also made findings regarding Claimant's age, education, and past work experience. *See id.* § 34A-2-413(1)(c)(iv)(A)–(C). For example, it found that Claimant returned to work for Employer in October 2012, but because she was "unable to think clearly or perform the physical aspects of her job duties," she found "a more sedentary job" with another company from December 2012 to July 2013. It also found that due to "concentration problems brought on by her medication and chronic pain," she "could not continue in that position." Employer has not challenged these findings. Additionally, the Commission had before it Claimant's testimony. Claimant testified that she had "applied numerous places" after July 2013 but that she could not conceive of any full-time jobs that she could now perform.

¶32    Given this evidence of Claimant's impairment, work history, and attempts to return to the workforce, the Commission could reasonably combine its consideration of this evidence with its "good common sense and general understanding of the job market" to find that Claimant could not perform the duties of any jobs that may be reasonably available. *See Quast*, 2017 UT 40, ¶ 27. On this record, we thus conclude that "a reasonable mind might accept as adequate the evidence supporting the [Commission's] decision" that Claimant had met her burden of production on this element. *See id.* ¶ 15 (cleaned up).

CONCLUSION

¶33    Substantial evidence supports the Commission's findings regarding Claimant's MMI and her inability to perform other work reasonably available. We therefore do not disturb its preliminary award of permanent total disability benefits to Claimant.

———————